Peter Asplund
KIRKLAND & ELLIS LLP
Attorneys for Plaintiff
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

**07 CIV 7590**

JUDGE McMAHON



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FORTRESS CREDIT CORP.,

        Plaintiff,

v.

ALARM ONE INC.,

        Defendant.

---

CASE NO.: 07 CIV. _____

## COMPLAINT

Plaintiff, Fortress Credit Corp., by its attorneys, Kirkland & Ellis LLP, complaining of defendant, alleges as follows:

### NATURE OF ACTION

1. Fortress Credit Corp. ("Fortress") brings this action against Alarm One Inc. ("Alarm One") seeking to foreclose upon the Collateral of Alarm One and appointment of Receiver in accordance with Fortress's security interest and rights pursuant to a February 11, 2005 Credit Agreement and amendments thereto, and a February 11, 2005 Security Agreement, providing Fortress a continuing first priority lien on and security interest in all of Alarm One's assets. A copy of the Credit Agreement is annexed hereto as Exhibit A. A copy of the Security Agreement is annexed hereto as Exhibit B.

## THE PARTIES

2. Fortress specializes in originating, structuring, and providing customized financing solutions to corporate, real estate, and asset-based borrowers. Fortress is a limited liability Delaware corporation with its principle place of business in New York, New York.

3. Defendant Alarm One provides home security alarm systems and services across the United States. Alarm One is an Illinois corporation with its principle place of business in Anaheim, California. Alarm One has ceased operations and has been in the process of selling its assets, which consist of alarm contracts, pursuant to an out-of-court sales process.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332, in so far as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this judicial district in so far as plaintiff is a resident of the State of New York, by virtue of the express terms of Section 11.16 of the Credit Agreement whereby the parties "irrevocably consent[] to the nonexclusive jurisdiction of any New York State or Federal Court sitting in New York, New York", and by the express terms of Section 22 of the Security Agreement whereby the parties "irrevocably consent[] to the nonexclusive jurisdiction of any New York State or Federal Court sitting in New York, New York".

## CLAIM FOR FORECLOSURE AND APPOINTMENT OF RECEIVER

6. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 5 hereof as if fully set forth herein.

7. On February 11, 2005, Fortress, Alarm One, and certain Lenders, executed a Credit Agreement whereby Alarm One requested Lenders and Fortress (in its capacity as Agent

for the Lenders) to provide a Revolving Credit Facility in a principal amount not to exceed $20,000,000, a $15,500,000 Term Loan A Facility, and a $12,500,000 Term Loan B Facility. The Credit Agreement was amended six times on June 30, 2005, October 31, 2005, December 21, 2005, January 31, 2006, March 31, 2006, and November 21, 2006.

8. Pursuant to the Credit Agreement, the Lenders appointed and authorized Fortress to act as Agent for the Lenders under the Credit Agreement; and Fortress agreed to act as Agent on behalf of Lenders. Later, Fortress purchased the position of the other Lenders.

9. By executing and delivering the Credit Agreement, Alarm One covenanted to pay and comply with all the terms and conditions of the Credit Agreement.

10. By the terms of the Credit Agreement, in return for the Revolving Credit Facility and Term Loan Facilities, Alarm One promised to pay, *inter alia*:

- a nonrefundable commitment fee (the "Commitment Fee") equal to .50% per annum (computed on the basis of a year of 360 days and actual days elapsed) on the average daily difference between the amount of: (a) such Lender's Revolving Credit Commitment as the same may be constituted from time to time and (b) such Lenders' Revolving Credit Loans Outstanding. All Commitment Fees shall be payable in arrears on the fifth day of each month after the date hereof and on the Expiration Date or upon acceleration of the Notes;

- the aggregate unpaid principal amount of the Revolving Credit Loans made to it by each lender, together with interest thereon, … evidenced by a Revolving Credit Note….;

- a nonrefundable facility fee equal to 2% of such Lender's Term Loan Commitments;

- the unpaid principal amount of the Term Loans made to it by each Lender, together with interest thereon, … evidenced by a Term Note … [and] payable to the order of each Lender in a face amount equal to the Term Loan of such Lender;

- a mandatory prepayment of principal equal to 50% of Excess Cash Flow for the immediately preceding fiscal year, together with accrued interest … on such principal amount; and

- a mandatory prepayment [whenever the Revolving Facility Usage exceeded the Borrowing Base] of principal equal to the excess of the Revolving Facility Usage over the Borrowing Base, together with accrued interest on such principal amount.

11. The Credit Agreement further required Alarm One to pay interest on the outstanding unpaid principal amount of the Loans.

12. The Credit Agreements establishes certain occurrences that constitute Events of Default, including whenever:

> Borrower shall fail to pay any principal of any Loan (including scheduled installments, mandatory prepayments or the payment due at maturity) or shall fail to pay any interest on any Loan, or any other amount owing under the Loan Documents after such principal, interest or other amount becomes due in accordance with the terms hereof or thereof.

13. Moreover, the Term Note contemplates an increased rate of interest after default such that the rate of interest for each Loan applicable pursuant to Section 4.1 [Interest Rate] shall increase 3.0% per annum until such Event of Default was cured or waived.

14. Pursuant to the terms of the Credit Agreement,

> If an Event of Default specified under Sections 9.1.1 through 9.1.13 shall occur and be continuing, Lenders and Agent shall be under no further obligation to make Loans and Agent [Fortress] may, and upon the request of Required Lenders, shall, by written notice to Borrower, declare the unpaid principal amount of the Notes then outstanding and all interest accrued thereon, any unpaid fees and all other Indebtedness of Loan Parties to Lenders hereunder and thereunder to be forthwith due and payable, and the same shall thereupon become and be immediately due and payable to Agent for the benefit of each Lender without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived,….

15. The Credit Agreement further provides Fortress with means of legal and other forms of redress in the Event of Default. The Credit Agreement provides:

> If an Event of Default shall occur and be continuing, and whether or not Agent shall have accelerated the maturity of Loans pursuant to any of the foregoing provisions of this Section 9.2, Agent or any Lender, if owed any amount with respect to the Loans, may proceed to protect and enforce its rights by suit in equity, action at law and/or other appropriate proceeding. whether for the specific performance of any covenant or agreement contained in any Loan Document, including as permitted by applicable Law the obtaining of the ex parte appointment of a receiver, and, if such amount shall have become due, by declaration or otherwise, proceed to enforce the payment thereof or any other legal or equitable right of Agent or such Lender.

16.     In order to secure the Revolving Credit Facility and Term Loan Facilities set forth in the Credit Agreement and the interest thereon, Alarm One executed a Security Agreement dated as of February 11 2005, granting Fortress a "continuing first priority lien on and security interest in" specified "Collateral subject only to permitted Liens," and by entering into a valid deposit account control agreement with Alarm One and LaSalle Bank, N.A.

17.     The Collateral subject to the continuing first priority lien and security interest is more fully described as follows:

> All of the Debtor's right, title and interest in, to and under the following property (each capitalized term used herein shall have the meaning given to it in the Uniform Commercial Code as in effect in the State of New York on the date hereof and as the same may subsequently be amended from time to time):
>
> (i) all now existing and hereafter acquired or arising Accounts, Goods, General Intangibles, Payment Intangibles, Deposit Accounts, Chattel Paper (including Electronic Chattel Paper), Documents, Instruments, Software, Investment Property, Letters of Credit, Letter of Credit Rights, advices of credit, money, Commercial Tort Claims on Schedule 1 attached hereto and made a part hereof, Equipment and Inventory, Fixtures and Supporting Obligations, together with all products of and Accessions to any of the foregoing and all Proceeds of any of the foregoing (including all insurance policies and proceeds thereof);
>
> (ii) to the extent, if any, not included in clause (i), each and every other item of personal property and fixtures, whether new or existing or hereafter arising or acquired, including all licenses, contracts and agreements, and all collateral for the payment or performance of any contract or agreement, together with all products and Proceeds (including all insurance policies and proceeds) of any Accessions to and of the foregoing; and
>
> (iii) all present and future business records and information, including computer tapes and other storage media containing the same and computer programs and software (including source code, object code and related manuals and documentation and all licenses to use such software) for accessing and manipulating such information.

18.     Fortress perfected its security interest by filing a UCC Financing Statement (Form UCC 1) with the Illinois Secretary of State for the Uniform Commercial Code Division on February 4, 2005, covering "All assets of the Debtor now owned or hereafter acquired, including,

without limitation, the collateral described on Exhibit A." A copy of the UCC Financing Statement is annexed hereto as Exhibit C.

19. Alarm One failed to comply with the terms and conditions of the Credit Agreement, and thereby committed multiple Events of Default that Alarm One never cured.

20. From October 31, 2005 to December 21, 2005, the date on which the parties entered into a Forbearance Agreement, Alarm One failed to maintain the ratio of Funded Debt to Consolidated Cash Flow from Operations of 6.0 to 1.0. Alarm One thereby failed to comply with Section 8.2.17 [Maximum Funded Debt]. A copy of the Third Amendment to Credit Agreement and Forbearance Agreement is annexed hereto as Exhibit D.

21. Alarm One further failed to maintain the sum of Availability plus unrestricted cash at no less than $1,000,000 for the period ending October 31, 2005, thereby violating Section 8.2.19 [Minimum Liquidity].

22. Alarm One, in the Third Amendment to Credit Agreement and Forbearance Agreement, acknowledged that "Existing Defaults have occurred and are continuing."

23. The Forbearance Agreement provided that Fortress would not exercise its rights under the Credit Agreement as a result of the existing defaults until expiration of the forbearance period.

24. Alarm One did not cure these Events of Default and the parties entered into the Fourth Amendment to Credit Agreement and Forbearance Agreement, a copy of which is annexed hereto as Exhibit E, on January 31, 2006, which extended the forbearance period.

25. The Fourth Amendment to Credit Agreement and Forbearance Agreement makes clear that Alarm One had committed additional Events of Default.

26. Alarm One failed to maintain the ratio of Funded Debt to Eligible RMR of 30 to 1 for the period from the Illinois Closing Date through January 31, 2006.

27. Alarm One failed to maintain the sum of Availability plus unrestricted cash at no less than $75,000 for the period ending January 31, 2006.

28. Alarm One, in the Fourth Amendment to Credit Agreement and Forbearance Agreement, acknowledged that "Existing Defaults have occurred and are continuing."

29. Alarm One failed to comply with Section 6(c) [Certain Covenants and Agreements; Sale of Additional California Accounts] of the Fourth Amendment and Forbearance Agreement by failing to complete the sale of the Additional California Accounts on or before February 28, 2006. This failure constituted an Event of Default under Section 9.1.4 [Breach of Other Covenants] of the Credit Agreement and triggered the Default interest rate [Section 4.3] for all outstanding Loans.

30. Alarm One failed to make the interest payment due and payable on March 31, 2006 pursuant to Section 6(a) of the Fourth Amendment and Forbearance Agreement in the amount of the increase in the accrued interest as a result of the Default Rate. This payment exceeded $75,000.

31. The parties entered into the Fifth Amendment to Credit Agreement and Amendment to Forbearance Agreement, a copy of which is annexed hereto as Exhibit F, on March 31, 2006, which extended the forbearance period. Alarm One, in the Fifth Amendment to Credit Agreement, acknowledged the "existing Events of Default."

32. Alarm One failed to make the interest payment due on April 5, 2006, in the amount of the increased interest accrued and payable as a result of the application of the Default Rate on April 5, 2006. This payment exceeded $75,000.

33. The forbearance period expired on April 27, 2006.

34. Alarm One failed to make the subsequent interest payments due on May 5, 2006, June 5, 2006, July 5, 2006, and August 5, 2006 in the amount of the increased interest accrued and payable as a result of the application of the Default Rate on each of May 5, 2006, June 5, 2006, July 5, 2006, and August 5, 2006. These payments exceeded $75,000.

35. Alarm One is in default of Section 5.5.4 that requires Alarm One to make a mandatory prepayment on principal equal to any excess of the Revolving Facility Usage over the Borrowing Base plus accrued interest on such principal amount.

36. Alarm One triggered its duty to pay under Section 5.5.4 by failing to accurately calculate its Borrowing Base. Alarm One miscalculated its Borrowing Base by including in its calculation of Eligible RMR (recurring monthly revenue) those customer accounts monitored by Monitronics International, Inc. ("Monitronics") after September 1, 2005. No RMR from customer accounts monitored by Monitronics should have been included after this date as Monitronics was not an Approved Central Station. When the Monitronics RMR is excluded from the Borrowing Base, the Revolving Facility Usage exceeds the Borrowing Base, and Alarm One must submit payment in accordance with Section 5.5.4. Alarm One failed to make such payments due on June 15, 2006 and July 15, 2006. These payment exceeded $75,000.

37. For the same reasons outlined in the preceding paragraph, Alarm One is in default of the Full Disclosure representation contained in Section 6.1.11 of the Credit Agreement.

38. Alarm One is in default of Section 9.1.4 by failing to deliver revisions or updates to Schedule 6.1.29 of the Credit Agreement and other schedules requiring updating.

39. Alarm One is in default of Section 8.2.19 by failing to maintain the sum of Availability plus unrestricted cash required under Section 8.2.19 of the Credit Agreement.

40. The parties entered into the Sixth Amendment to Credit Agreement and Amendment, a copy of which is annexed hereto as Exhibit G, on November 21, 2006. Alarm One, in the Sixth Amendment to Credit Agreement, acknowledged that "certain Events of Default have occurred and are continuing."

41. By letters dated March 1, 2006, May 4, 2006, June 15, 2006, and August 21, 2006, copies of which are annexed hereto as Exhibits H, I, J, and K respectively, Fortress provided Alarm One written notice of the Events of Default set forth in the preceding paragraphs of this Complaint.

42. Alarm One failed to cure these Events of Default, and therefore Fortress is entitled to foreclosure on Alarm One's Collateral.

43. By Section 9.2.4 of the Credit Agreement, Fortress also is expressly provided the right to obtain ex parte appointment of a receiver.

44. Immediate appointment of a receiver is imperative to protect Fortress's rights and interest in the Collateral as Alarm One's assets now only amount to certain alarm monitoring accounts and fixtures.

45. Additionally, Alarm One is involved in litigation that further substantially threatens Fortress's continuing first priority lien on and security interest in Alarm One's Collateral. In connection with *Janet Orlando v. Alarm One, Inc.*, No. CE CG 01288DSB, Cal. Super. Ct., Cnty. of Fresno, Janet Orlando has moved the court there for an order appointing a post judgment limited receiver for Alarm One based upon that court's judgment in favor of Orlando in the amount of $1.7 million.

46. Ms. Orlando seeks an order appointing a receiver to perform numerous acts that will effectively deplete Alarm One of its remaining assets and thereby destroy Fortress's continuing first priority lien. Ms. Orlando seeks appointment of a receiver to:

- Take possession of all Alarm One's business, together with all personal property, stock, fixtures, goods, documents, patents, trademarks, copyrights, books, records, papers and accounts of Alarm One's business;

- Locate, seize, and liquidate all Alarm One's assets for application to Ms. Orlando's judgment;

- Employ agents and employees as the receiver believes, in his business judgment, necessary to carry out his duties as the receiver and to pay said agents and employees at ordinary and usual rates and prices pursuant to appropriate contracts out of the funds that shall come into his possession as receiver;

- Open and maintain bank accounts in the name of the Receivership estate in an appropriate federally insured lending institution;

- Collect monies from or liquidate appropriate contracts for the business and maintenance of the subject business;

- Seize, open and/or maintain Alarm One's checking and savings accounts;

- Seize, transfer and open, and review all Alarm One's postal correspondence;

- Rent and/or lease any part of Alarm One;

- Collect and receive all income, rents, subrents, earnings, income issues, profits, revenues and royalties from the subject businesses;

- Hold and retain all money which may come into his possession, custody and control by virtue of his appointment and not expend it for any other purposes authorized herein until further order of the court for the purposes of paying the receiver's fees and to satisfy the monies owed to the Judgment Creditors by Alarm One; and

- Demand all income, rents subrents and profits for the subject property or any part thereof due and unpaid by tenants of the subject businesses or property.

47. Ms. Orlando's motion for appointment of a post judgment limited receiver will be before the Superior Court of California, Fresno in six short days, on August 30, 2007. That court, on this day, will also hear Ms. Orlando's motion seeking an assignment order of Alarm One's current and future income. By this motion, Ms. Orlando seeks an assignment to her of the following:

- Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One in any and all Security alarm contracts;

- Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One in any and all third party monitoring contracts;

- Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One for the use of its name;

- Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One in any and all insurance and/or insurance policies;

- Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One in any and all maintenance and repair contracts;

- Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly, to Alarm One in any and all dealer programs; and

- Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One in any and all other sources of income, including but not limited to accounts, account sales, assets, asset sales, licenses, investments, tax refunds, worker's compensation refunds, prepaid expenses, overpayments, commissions, royalties, stocks, bonds, deferred compensation, account receivables, customers and/or contract receivables from third party entities.

48. No other action or proceeding for the recovery of the assets mentioned in this Complaint, or any part thereof, has been commenced by Fortress.

WHEREFORE, plaintiff Fortress demands judgment against the defendant as follows:

(a) That the continuing first priority lien established by the Credit Agreement be foreclosed and the defendant, subsequent to the filing of the notice of pendency hereof, be forever barred and foreclosed of all right, title, claim, lien and equity of redemption to the Collateral;

(b) Appointment of a Receiver of the Collateral to receive and collect the earnings, revenues, rents, issues, profits and income from the Collateral with the usual powers and duties. Such Receiver, however, will not:

Locate, seize, and liquidate all Alarm One's assets for application to Ms. Orlando's judgment;

Hold and retain all money which may come into his possession, custody and control by virtue of his appointment and not expend it for any other purposes until further order of the Superior Court of the State of California, County of Fresno, to satisfy the monies owed to the Judgment Creditors by Alarm One; or

Assign to Ms. Orlando:

> Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One in any and all Security alarm contracts;
>
> Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One in any and all third party monitoring contracts;
>
> Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One for the use of its name;
>
> Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One in any and all insurance and/or insurance policies;
>
> Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One in any and all maintenance and repair contracts;
>
> Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly, to Alarm One in any and all dealer programs; or
>
> Any and all rights to any interest or payment now due, or to become due in the future, directly or indirectly to Alarm One in any and all other sources of income, including but not limited to accounts, account sales, assets, asset sales, licenses, investments, tax refunds, worker's compensation refunds, prepaid expenses, overpayments, commissions, royalties, stocks, bonds, deferred compensation, account receivables, customers and/or contract receivables from third party entities;

    (c)    For plaintiff's costs and disbursements of this action including its attorneys' fees; and

    (d)    For such other and further relief as this Court may deem just, equitable and proper.

Date:   August 24, 2007

Respectfully submitted,

_____
Peter Asplund
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

*Attorneys for Plaintiff*
**FORTRESS CREDIT CORP.**