# EXHIBIT E

## FOURTH AMENDMENT TO CREDIT AGREEMENT AND FORBEARANCE AGREEMENT

This FOURTH AMENDMENT TO CREDIT AGREEMENT AND FORBEARANCE AGREEMENT (together with all agreements, documents and instruments attached hereto or referred to herein as any or all of the same may be amended, replaced or supplemented from time to time, the **"Forbearance Agreement"**) is dated as of the 31st day of January, 2006, by and among ALARM ONE, INC., an Illinois corporation (the **"Borrower"**), the Lenders (as defined herein), and FORTRESS CREDIT CORP., as agent for the Lenders (the **"Agent"**).

R E C I T A L S:

A.    Reference is made to that certain Credit Agreement, dated as of February 11, 2005, as amended, by and among the Borrower, other Loan Parties from time to time party thereto, the financial institutions from time to time party thereto (the **"Lenders"**), and Agent (the **"Credit Agreement"**).

B.    Events of Default have occurred and are continuing which Events of Default occurred by reason of:

(1)    <u>Maximum Funded Debt</u> (Section 8.2.17).  At October 31, 2005 and November 30, 2005, the Borrower failed to maintain the ratio of Funded Debt to Consolidated Cash Flow from Operations of 6.0 to 1.0 for the period from Closing Date through July 31, 2006. In addition, at December 31, 2005 and to the date of this Forbearance Agreement, the Borrower has failed to maintain the ratio of Funded Debt to Eligible RMR of 30 to 1 for the period from the Illinois Closing Date through January 31, 2006.

(2)    <u>Minimum Liquidity</u> (Section 8.2.19).  The Borrower has failed to maintain the sum of Availability plus unrestricted cash at no less than $1,000,000 for the period ending October 31, 2005, and at no less than $750,000 for the periods ending November 30, 2005, December 31, 2005 and as of the date of this Forbearance Agreement.

(hereinafter, the foregoing identified Events of Default shall sometimes be referred to as the **"Existing Defaults"**).

C.    The Borrower acknowledges that the Existing Defaults have occurred and are continuing.

D.    The Borrower has requested that the Agent and the Lenders enter into this Forbearance Agreement, and the Agent and the Lenders are willing to enter into this Forbearance Agreement, but only upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the above recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby mutually acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1.    <u>Definitions</u>.  All capitalized terms used but not defined in this Forbearance Agreement shall have the meanings ascribed thereto in the Credit Agreement.  The rules of construction set forth in Section 1.2 [Construction] of the Credit Agreement apply to this Forbearance Agreement.

2.    <u>Affirmation of Recitals</u>.  The recitals set forth above are true and correct and incorporated herein by reference.

3.    <u>Acknowledgment of Defaults</u>.  The Borrower acknowledges that: (i) the Existing Defaults have occurred and are continuing under the Credit Agreement and the Loan Documents and constitute Events of Default under the Credit Agreement, (ii) the Lenders are under no further obligation to make additional Loans, and (iii) the Agent or the Lenders may declare all Obligations under the Credit Agreement and the Loan Documents to be due and payable as more fully provided in the Loan Documents, without defense, counterclaim or set-off including the Agent's and the Lenders' expenses, including attorneys' fees and expenses and all other obligations and liabilities arising hereafter or incurred due to the Lenders or by the Borrower hereunder or under the Credit Agreement or any of the other Loan Documents.

4.    <u>Amendment of Credit Agreement</u>.

(a)    Section 1.1 [Certain Definitions.] of the Credit Agreement is hereby amended to add the following new definition to be inserted in correct alphabetical order therein:

"<u>Initial ADT Closing Date</u> shall mean the date on which the consummation of the sale of certain of the Borrower's customer accounts located in the State of California to ADT Security Services, Inc. occurs, pursuant to that certain Account Purchase Agreement dated as of February 2, 2006 between the Borrower, as seller, and ADT Security Services, Inc, as buyer."

(b)    Clause (b) of the definition of "Eligible RMR" set forth in Section 1.1 [Certain Definitions] of the Credit Agreement is hereby amended to extend the period during which 5% of Eligible RMR can be, on an aggregate basis, from customers evidenced by Residential Security Alarm Contracts or Commercial Contract Guarantors that, in each case existed as of 6 months prior to the Closing Date and had an Approved Credit Score greater than or equal to 575 and below 600 at the time of origination, from the first anniversary of the Closing Date to March 31, 2006.

(c)    Section 8.2.17 [Maximum Funded Debt] of the Credit Agreement is hereby amended and restated in its entirety as follows:

"Loan Parties shall not at any time permit the ratio of their Funded Debt to Consolidated Cash Flow from Operations (calculated for the twelve (12) months then ended) to exceed the ratio set forth below for the period specified

below:

| Period | Ratio |
|--------|-------|
| Closing Date through July 31, 2006 | 6.0 to 1.0 |
| August 1, 2006 through January 31, 2007 | 5.5 to 1.0 |
| February 1, 2007 through July 31, 2007 | 5.0 to 1.0 |
| August 1, 2007 and thereafter | 4.5 to 1.0 |

Prior to the Initial ADT Closing Date, the Loan Parties shall not at any time permit the ratio of their Funded Debt to Eligible RMR to exceed the ratio set forth below for the period specified below:

| Period | Ratio |
|--------|-------|
| Illinois Closing Date through January 31, 2006 | 30.0 to 1.0 |
| February 1, 2006 through January 31, 2007 | 29.0 to 1.0 |
| February 1, 2007 through July 31, 2007 | 28.5 to 1.0 |
| August 1, 2007 and thereafter | 28.0 to 1.0 |

From and after the Initial ADT Closing Date, the Loan Parties shall not at any time permit the ratio of their Funded Debt to Eligible RMR to exceed the ratio set forth below for the period specified below:

| Period | Ratio |
|--------|-------|
| Initial ADT Closing Date through March 31, 2006 | 30.0 to 1.0 |
| April 1, 2006 through January 31, 2007 | 29.0 to 1.0 |
| February 1, 2007 through July 31, 2007 | 28.5 to 1.0 |
| August 1, 2007 and thereafter | 28.0 to 1.0" |

(d)    Section 5.10 [Exit Fee] of the Credit Agreement is hereby amended and restated in its entirety to read as follows:

"Immediately upon payment in full of all Loans and termination of all Commitments, Borrower shall pay to Agent an exit fee in the aggregate principal amount of $1,225,000, plus the Prepayment Fee (as that term is defined in the Fourth Amendment to Credit Agreement and Forbearance Agreement dated as of January 31, 2006). Such fee shall be payable to Agent for the benefit of Lenders making Term Loans B.

5.    The Agent's and the Lenders' Forbearance.  Provided that no Event of Termination (as defined herein) occurs under this Forbearance Agreement and that no additional Event of Default (other than the Existing Defaults), as defined under the Credit Agreement or any Loan Document, occurs under the Credit Agreement or any Loan Document, the Agent and the Lenders agree, subject to the terms and conditions set forth in this Forbearance Agreement (including compliance of the Borrower with the provisions of Section 6) and in the Credit Agreement and the Loan Documents, not to exercise any of their remedies under the Credit Agreement or any Loan Document, or remedies otherwise available to the Lenders, to collect the Obligations hereunder or under the Credit Agreement or any Loan Document or applicable law as a result of the Existing Defaults for the period (the **"Forbearance Period"**) from the date hereof through and including 5:00 p.m. (New York City time) on the Forbearance Termination Date (as defined in Section 10).

6.    Certain Covenants and Agreements.  Notwithstanding any provision of the Credit Agreement or any other Loan Document to the contrary, the Agent and the Lenders hereby agree, and the Borrower hereby covenants from and after the date hereof (or, if expressly stated below, from and after such later expressly stated date) to the Agent and the Lenders and agrees as follows:

(a)     <u>Increase of Interest Rate</u>. From and after November 15, 2005, all outstanding Loans shall bear interest at the Default Rate. All interest accrued from November 15, 2005 through the earlier of March 31, 2006 or the Payoff Date (as defined herein) as a result of the increase in the otherwise applicable interest rate to the Default Rate shall be due and payable on the earlier of: (i) March 31, 2006 or (ii) the date on which all Obligations of the Loan Parties under the Credit Agreement have been indefeasibly paid in full and the Commitments have terminated (the **"Payoff Date"**), and thereafter, if the Payoff Date has not occurred, shall be payable as set forth in the Credit Agreement.

(b)     <u>Sale of Initial California Accounts</u>.

(i)     The Borrower shall diligently pursue the sale of certain of its customer accounts located in the State of California for a minimum purchase price of $11,899,097 (the **"Initial California Accounts"**). The Borrower represents and warrants that the Initial California Accounts are subject to that certain Account Purchase Agreement, dated as of February 2, 2006, between the Borrower, as seller, and ADT Security Services, Inc., as buyer (the **"First ADT Purchase Agreement"**), a true, correct and complete copy of which has previously been delivered to the Agent, and that the First ADT Purchase Agreement has not been amended, restated, modified or supplemented and remains in full force and effect. Any future amendments, restatements, modifications or supplements to the First ADT Purchase Agreement shall be delivered to the Agent, in form and substance satisfactory to the Agent. The closing for the sale of the Initial California Accounts under the First ADT Purchase Agreement is anticipated to occur on or about February 2, 2006.

(ii)     Upon the consummation of the sale of the Initial California Accounts and subject to the consent executed by the Agent, Lenders and the Borrower prior to such sale: (a) the Borrower shall be permitted to apply up to $6,100,000 from the proceeds of the sale of the Initial California Accounts towards the purchase of certain customer accounts in the aggregate amount equal to approximately $213,300 of RMR from Apex Alarm LLC, which purchase is anticipated to occur on or about February 2, 2006, pursuant to the terms of that certain Account Purchase Agreement dated as of February 2, 2006 by the Borrower and Apex Alarm LLC, a true, correct and complete copy of which has previously been delivered to Agent, (b) the Borrower shall apply $5,000,000 of the proceeds as a prepayment of the Term Loan A outstanding under the Credit Agreement, and (c) the Borrower shall be permitted to retain the balance of such proceeds for general corporate purposes and for working capital. In addition, the parties agree to increase the Exit Fee pursuant to Section 4(d) by an amount equal to .5% of the amount of the Term Loan A prepaid in connection with the consummation of the sale of the Initial California Accounts (the **"Prepayment Fee"**).

(c)     <u>Sale of Additional California Accounts</u>.     The Borrower shall diligently pursue the sale of certain of its additional customer accounts located in the State of California (the **"Additional California Accounts"**), which sale shall occur on or before February 28, 2006. The Borrower represents and warrants that the Additional California Accounts shall be subject to an account purchase agreement between the Borrower, as seller and ADT Security Services, Inc. or another buyer satisfactory to the Agent, as buyer (the **"Additional California Account Agreement"**), and shall otherwise be substantially in the form utilized in connection

with the sale under the First ADT Purchase Agreement. At the time of the sale of the Additional California Accounts, the Agent shall execute and deliver a consent and waiver in connection with the sale of the Additional California Accounts substantially in the form utilized in connection with the sale of the Initial California Accounts under the First ADT Purchase Agreement. The terms of the Additional California Account Agreement shall set forth that the purchase price of the sale of the Additional California Accounts shall be in an aggregate amount not less than $8,300,000 and the Agent and the Lenders shall accept a prepayment of $8,300,000 of the senior indebtedness from the proceeds of the sale.

(d)    Fees.

(i)    The Borrower shall pay to the Agent an accommodation fee in the amount of $100,000 of which $75,000 shall be due and payable to the Agent on the date hereof and of which $25,000 shall be added to the Exit Fee pursuant to Section 4(d), provided, however, that in the event that the Loans are not refinanced or otherwise paid in full on or before March 31, 2006, the Borrower shall pay to the Agent an additional accommodation fee in the amount of $100,000 which additional accommodation fee shall be due and payable to the Agent on March 31, 2006.

(ii)    The Borrower shall on the date hereof pay to the Agent all other fees, costs and expenses accrued through the date hereof, including the fees and expenses of Agent's counsel in connection with this Forbearance Agreement.

(e)    Certifications. The Borrower shall furnish to the Agent prior to or at the time of execution hereof a certified copy of the resolutions adopted by its board of directors or governing body authorizing the Borrower's execution, delivery and performance of this Forbearance Agreement and the incumbency of the officers authorized to execute and deliver the Forbearance Agreement on behalf of the Borrower, together with the true signature of such officers.

(f)    Treatment as Loan Document. The Borrower acknowledges and agrees that this Forbearance Agreement is a Loan Document.

(g)    Refinancing of Loans. The Borrower agrees that it shall use its best efforts to refinance the Loans on or before March 31, 2006.

7.    Representations, Warranties, and Covenants. As a material inducement to the Agent and the Lenders to enter into this Forbearance Agreement, the Borrower hereby represents, warrants, covenants and agrees with the Agent and the Lenders that:

(a)    No Other Defaults. There exist no Event of Default or Potential Default under the Credit Agreement except for the Existing Defaults.

(b)    Actions. There are no actions, suits, or proceedings pending, or, to the best of the Borrower's knowledge, threatened against or directly affecting the Borrower or any

collateral securing the Borrower's obligations under the Credit Agreement, in any court or before or by any governmental instrumentality, whether federal, state, county or municipality.

(c)     <u>Organization</u>. The Borrower is duly organized, validly existing and in good standing under the laws of the jurisdiction under which it is organized.

(d)     <u>Power and Authority</u>. The Borrower has all the power and authority to execute, deliver and perform this Forbearance Agreement.

(e)     <u>Authorization</u>. The consummation of the transactions herein contemplated and the performance or observance of the Borrower's Obligations under the Credit Agreement, the Loan Documents, this Forbearance Agreement and the transactions required or contemplated herein to which the Borrower is a party:

(i)     have been duly authorized by all necessary action on the part of the Borrower;

(ii)     will not conflict with or result in a breach of or default under any injunction, or decree of any court or governmental instrumentality, or any agreement or instrument to which the Borrower is now a party or is subject; and

(iii)     will not (except to the extent provided in this Forbearance Agreement) result in the creation or imposition of any lien of any nature whatsoever upon any of the property or assets of the Borrower pursuant to the terms of any such forbearance agreement or instrument.

(f)     <u>Consents and Approvals</u>. To the extent any consent, approval, order, or authorization or registration, declaration, or filing with any governmental authority or other person or legal entity is required in connection with the valid execution and delivery of this Forbearance Agreement or the carrying out or performance of any of the transactions required or contemplated by this Forbearance Agreement, all such consents, approvals, orders or authorizations shall have been obtained or all such registrations, declarations, or filings shall have been accomplished prior to the entry of this Forbearance Agreement.

(g)     <u>Representations and Warranties</u>. The Borrower agrees that the representations and warranties of the Borrower set forth in the Credit Agreement and the other Loan Documents are true and correct as if made and restated on the date of this Forbearance Agreement (except representations and warranties which expressly speak of a specified date and representations and warranties which fail to be true and correct to the extent and only to the extent such failure arises directly from or otherwise directly relates to the Existing Defaults).

8.     <u>Events of Termination</u>. An Event of Termination shall mean the occurrence of any one or more of the following (each an "**Event of Termination**"):

(a)    any Event of Default, as defined in the Credit Agreement or any Loan Document, occurs under the Credit Agreement or any Loan Documents (other than the Existing Defaults);

(b)    any Loan Document shall cease to be (i) the valid, binding obligation of any party (other than the Agent) thereto, or (ii) enforceable against any party (other than the Agent) thereto in accordance with its terms;

(c)    the failure of the Borrower to comply with each of the covenants or agreements contained in Section 6 or the material breach or violation of any other term, covenant, agreement, obligation or condition contained in this Forbearance Agreement; or

(d)    any representation or warranty contained in this Forbearance Agreement shall prove to have been false or materially misleading as of the time it was made, or the existence of a material misrepresentation of fact or fraud contained in any certificate, document or information heretofore or hereafter submitted or communicated (with the exception of the Existing Defaults) to the Agent pursuant to or in support of this Forbearance Agreement.

9.    Release; No Discharge.  As additional consideration for the Agent and the Lenders entering into this Forbearance Agreement, the Borrower hereby fully and unconditionally releases and forever discharges the Agent and the Lenders, their agents, employees, directors, officers, attorneys, branches, affiliates, subsidiaries, successors and assigns and all persons, firms, corporations and organizations acting on any of their behalves (the "Released Parties") of and from any and all claims, liabilities, demands, obligations, damages, losses, actions and causes of action whatsoever which the Borrower may now have or claim to have against the Agent or the Lenders or any other Released Parties from the beginning of the world to the date hereof, whether presently known or unknown and of any nature and extent whatsoever, including on account of or in any way affecting, concerning or arising out of or founded upon this Forbearance Agreement, the Credit Agreement or the Loan Documents, including all such loss or damage of any kind heretofore sustained or that may arise as a consequence of the dealings among the parties up to and including the date hereof, including the administration or enforcement of the Loans, the Notes, the Obligations, the Credit Agreement or any of the Loan Documents.  The obligations of the Borrower under the Credit Agreement, the Loan Documents, and this Forbearance Agreement shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, discharged or in any way affected by:

(a)    any exercise or nonexercise of any right, remedy, power or privilege under or in respect of this Forbearance Agreement, the Credit Agreement or any Loan Document, any document relating to or evidencing any of the Agent's or Lenders' liens, or applicable Law, including any waiver, consent, extension, indulgence or other action or inaction in respect thereof; or

(b)    any other act or thing or omission or delay to do any other act or thing which could operate to or as a discharge of the Borrower as a matter of law, other than

payment in full of all Obligations, including all obligations under the Credit Agreement, the Loan Documents and this Forbearance Agreement.

10.     Termination.  On and after March 31, 2006 (the "Forbearance Termination Date"), (a) the Lenders shall have no obligation to make any advances, loans or extensions of credit to the Borrower other than advances made at Lenders' sole discretion (specifically excluding advances used to fund any Dealer Program or bulk purchase of security alarm contracts) and (b) the Agent may in its sole and absolute discretion: (i) end this forbearance without notice or demand of any kind or nature whatsoever, or (ii) pursue any rights and remedies available to it, including declaring all Obligations under the Credit Agreement and Loan Documents to be due and payable as more fully provided in the Credit Agreement, without defense, counterclaim or set-off, together with interest accrued thereon calculated at the rate applicable during an Event of Default as provided for in Section 4.3 [Interest After Default] of the Credit Agreement and the Agent's and Lenders' expenses, including attorneys' fees and expenses and all other obligations and liabilities arising hereafter or incurred due to the Agent and the Lenders or by the Borrower hereunder or under the Credit Agreement or any Loan Document.

11.     Construction.  This Forbearance Agreement shall not be construed more strictly against the Agent merely by virtue of the fact that this Forbearance Agreement may have been or has been prepared by the Agent or its counsel, it being recognized that the Borrower has contributed substantially and materially to the preparation of this Forbearance Agreement.  The Borrower acknowledges and waives any claim contesting the existence and the adequacy of the consideration given by any of the other parties hereto for entering into this Forbearance Agreement.  All of the Collateral shall remain in all respects subject to the lien of the applicable security agreement and nothing herein contained and nothing done pursuant hereto shall affect the lien of any such security agreement or the priority thereof.  Nothing in this Forbearance Agreement shall be intended or construed to hold the Agent liable or responsible for any expenses, disbursements, liability or obligation of any kind or nature whatsoever of the Borrower.

12.     Entire Agreement.  The Borrower acknowledges that there are no other agreements or representations, either oral or written, expressed or implied, not embodied in this Forbearance Agreement and the Credit Agreement and other Loan Documents, which, together, represent a complete integration of all prior and contemporaneous agreements and understandings of the Borrower, the Agent and the Lenders.  The Borrower hereby acknowledges and agrees that the Credit Agreement and other Loan Documents are in full force and effect and the provisions of the Credit Agreement and other Loan Documents are hereby ratified and confirmed.

13.    <u>The Borrower Remains in Control</u>.  The Borrower acknowledges that it remains in control of: (i) its business and affairs and determines the business plan for, and (ii) the employment, management, and operating directions and decisions for, its business and affairs.

14.    <u>Time is of the Essence</u>.  Time shall be of the strictest essence in the performance of each and every one of the Borrower's obligations hereunder and under the Credit Agreement and the other Loan Documents, including the obligations to make payments to the Agent, to furnish information to the Agent, and to comply with all reporting requirements.

15.    <u>No Waiver of Rights Under Credit Agreement and Other Loan Documents</u>.  Any negotiation heretofore or hereafter and any action undertaken pursuant to this Forbearance Agreement, the Credit Agreement and the other Loan Documents or during the Forbearance Period shall not constitute a waiver of any Event of Default (including any Existing Default) or event or condition which, with the passage of time, the giving of notice, or a determination by the Agent, would constitute an Event of Default or of the Agent's or any Lender's rights or remedies under the Credit Agreement or any other Loan Document or this Forbearance Agreement or prejudice the Agent's or any Lender's rights under the Credit Agreement, the Loan Documents or this Forbearance Agreement except to the extent specifically set forth herein.  No party shall be bound by any oral agreement, and no rights or liabilities, either expressed or implied, shall arise on the part of any party, or any third party, until and unless the agreement on any given issue has been reduced to a written agreement executed in accordance with the applicable provisions of the Credit Agreement.

16.    <u>Voluntary Agreement; Indemnity</u>.

(a)    The Borrower represents and warrants (i) that it is represented by legal counsel of its choice and that its counsel has had the opportunity to review this Forbearance Agreement, (ii) that it is fully aware of the terms contained herein and (iii) that it has voluntarily and without coercion or duress of any kind or nature whatsoever entered into this Forbearance Agreement.  The provisions of this Forbearance Agreement shall survive the execution and delivery of this Forbearance Agreement.

(b)    The Borrower agrees to indemnify the Agent and the Lenders and hold the Agent and the Lenders harmless in respect of any and all claims, liabilities, damages and expenses (including attorneys' fees and expenses) asserted by any person whatsoever or incurred by the Agent or any Lender relating to or arising in connection with the Credit Agreement, the Loan Documents or this Forbearance Agreement, except if the same results solely from the Agent's or such Lender's gross negligence or willful misconduct, subject only to such limitations as are set forth in the Credit Agreement.  This indemnity agreement shall survive the termination of this Forbearance Agreement, the Credit Agreement or the Loan Documents and the consummation of the transactions contemplated hereby.

17.    <u>Conditions to Effectiveness of this Forbearance Agreement</u>.  The effectiveness of this Forbearance Agreement is expressly conditioned upon satisfaction of each of the following conditions precedent:

(a)    <u>Guaranty</u>.  Borrower shall cause to be delivered to the Agent a Limited Guaranty given by Peter Maltby, individually, in favor of the Agent, a form of which is attached to this Forbearance Agreement as <u>Exhibit A</u>.

(b)    <u>No Violation of Laws, No Actions or Proceedings</u>.  The execution of this Forbearance Agreement shall not contravene any Law applicable to any Loan Party or any of the Lenders.  No action, proceeding, investigation, regulation or legislation shall have been instituted, threatened or proposed before any court, governmental agency or legislative body to enjoin, restrain or prohibit, or to obtain damages in respect of this Forbearance Agreement or the consummation of the transactions contemplated hereby, which, in the Agent's sole discretion, would make it inadvisable to consummate the transactions contemplated by this Forbearance Agreement or any of the other Loan Documents.

(c)    <u>Legal Details; Counterparts</u>.  All legal details and proceedings in connection with the transactions contemplated by this Forbearance Agreement shall be in form and substance satisfactory to the Agent, the Agent shall have received from the Borrower and the Required Lenders an executed original of this Forbearance Agreement and the Agent shall have received all such other counterpart originals or certified or other copies of such documents and proceedings in connection with such transactions, all in form and substance satisfactory to the Agent.

18.    <u>Force and Effect</u>.  The Credit Agreement is hereby amended through and including this Forbearance Agreement, and each of the other Loan Documents are hereby ratified and confirmed and are and shall remain in full force and effect on and after the date of this Forbearance Agreement.  The parties hereto do not amend any provisions of the Credit Agreement or the other Loan Documents except for the amendments as expressly set forth herein.  No novation to any Loan Document is intended or shall occur by or as a result of this Forbearance Agreement.

19.    <u>Counterparts</u>.  This Forbearance Agreement may be executed in one or more counterparts and by facsimile, each of which shall constitute an original and all of which taken together shall constitute one agreement.  Each party executing this Forbearance Agreement represents that such party has the full authority and legal power to do so.

20.    <u>No Waiver of Remedies</u>.  The Agent and the Lenders expressly reserve any and all rights and remedies available to them under this Forbearance Agreement, the Credit Agreement, the Loan Documents, any other agreement, or at law or in equity or otherwise.  No failure to exercise, or delay by the Agent or any Lender in exercising, any right, power or privilege hereunder or under the Credit Agreement or any other Loan Document shall preclude

any other or further exercise thereof, or the exercise of any other right, power or privilege. The rights and remedies provided in this Forbearance Agreement, the Credit Agreement and other Loan Documents are cumulative and not exhaustive of each other or of any right or remedy provided by law or equity or otherwise. No notice to or demand upon the Borrower, in any instance shall, in itself, entitle the Borrower to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of the Agent or any Lender to any other or further action in any circumstance without notice or demand.

21.    No Commitment.  This Forbearance Agreement is not intended as a commitment by the Agent or the Lenders to modify the Credit Agreement or any other Loan Document in any respect or otherwise, except as expressly provided herein, and the Agent and the Lenders hereby specifically confirm that they make no such commitment and specifically advise that no action should be taken by the Borrower based upon any understanding that such a commitment exists or on any expectation that any such commitment will be made in the future.

22.    No Third Party Beneficiaries.  By execution of this Forbearance Agreement, the Agent and the Lenders do not intend to assume and are not hereby assuming any obligation to any third party, including any contractor or subcontractor.  No third party shall be or shall be deemed to be a beneficiary of this Forbearance Agreement.

23.    Governing Law and Binding Effect.  This Forbearance Agreement shall be deemed to be a contract under the Laws of the State of New York and shall, pursuant to New York General Obligations Law Section 5-1401, for all purposes be governed by and construed and enforced in accordance with the laws of the State of New York.  This Forbearance Agreement shall be binding upon and shall inure to the benefit of the Borrower, the Lenders, and the Agent and their respective successors and assigns; provided, however, that the Borrower may not assign any of its rights or duties hereunder without the prior written consent of the Agent.

24.    LIMITATION ON DAMAGES.  NEITHER THE AGENT NOR ANY LENDER NOR ANY AGENT OR ATTORNEY FOR OR OF THE AGENT OR SUCH LENDER SHALL BE LIABLE TO THE BORROWER FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES ARISING FROM ANY BREACH OF CONTRACT, TORT OR OTHER WRONG RELATING TO THE ESTABLISHMENT, ADMINISTRATION OR COLLECTION OF THE OBLIGATIONS (AS DEFINED IN THIS FORBEARANCE AGREEMENT) OR THIS FORBEARANCE AGREEMENT, THE CREDIT AGREEMENT OR ANY LOAN DOCUMENT OR THE ACTION OR INACTION OF THE AGENT OR ANY LENDER OR THE BORROWER UNDER THIS FORBEARANCE AGREEMENT, THE CREDIT AGREEMENT OR ANY LOAN DOCUMENT OR OTHERWISE.

25.    WAIVER OF RIGHT TO TRIAL BY JURY. THE BORROWER, THE LENDERS, AND THE AGENT EACH HEREBY EXPRESSLY WAIVES ANY RIGHT TO

TRIAL BY JURY IN ANY ACTION OR PROCEEDING OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION BASED UPON, RELATING TO OR ARISING UNDER THIS FORBEARANCE AGREEMENT, THE CREDIT AGREEMENT, ANY LOAN DOCUMENT OR ANY OTHER AGREEMENT, DOCUMENT OR INSTRUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ANY TRANSACTION RELATED HERETO OR THERETO OR THE SUBJECT MATTER HEREOF OR THEREOF, IN EACH CASE WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE BORROWER, THE LENDERS, AND THE AGENT EACH HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS FORBEARANCE AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT OR OFFICIAL BODY AS WRITTEN EVIDENCE OF THE CONSENT OF THE BORROWER, THE LENDERS, AND THE AGENT TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE BORROWER, THE LENDERS, AND THE AGENT, AND EACH OF THEM ACKNOWLEDGES THAT NONE OF THE AGENT OR ANY LENDER NOR ANY PERSON ACTING ON BEHALF OF THE AGENT OR ANY LENDER HAS OR HAVE MADE ANY REPRESENTATIONS OF FACT, LAW OR OTHERWISE TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE BORROWER FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS FORBEARANCE AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED BY ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.  THE BORROWER AGREES THAT THE OBLIGATIONS UNDER THIS FORBEARANCE AGREEMENT ARE EXEMPTED TRANSACTIONS UNDER THE TRUTH-IN-LENDING ACT, 15 U.S.C. SECTION 1061, ET SEQ.  THE BORROWER FURTHER ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS THE MEANING OF THIS WAIVER PROVISION.

26.     <u>CONSENT TO JURISDICTION</u>.

EACH OF THE BORROWER, THE LENDERS AND THE AGENT HEREBY IRREVOCABLY CONSENTS TO THE NONEXCLUSIVE JURISDICTION OF ANY NEW YORK STATE OR FEDERAL COURT SITTING IN NEW YORK, NEW YORK, AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO SUCH PARTY AT THE ADDRESSES PROVIDED FOR IN SECTION 11.6 [NOTICES] OF THE CREDIT AGREEMENT AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT THEREOF.  EACH OF THE BORROWER, THE LENDERS AND THE AGENT WAIVES ANY OBJECTION TO JURISDICTION AND VENUE OF ANY ACTION INSTITUTED AGAINST IT AS PROVIDED HEREIN AND AGREES NOT TO ASSERT ANY DEFENSE BASED ON LACK OF JURISDICTION OR VENUE.

27.    <u>Expenses</u>. The Borrower agrees to reimburse the Agent and the Lenders for all costs and expenses (including all fees and expenses of counsel or such other advisors or accountants with whom the Agent or any Lender may consult and all expenses and costs of litigation or preparation therefor) in connection with:

(a)    this Forbearance Agreement and any amendments, supplements, waivers, replacements, modifications or consents to this Forbearance Agreement, the Credit Agreement, any Loan Document, or any document relating to or evidencing any of the liens of the Agent or any Lender;

(b)    the enforcement, protection or preservation of the Agent's and the Lenders' rights or remedies under this Forbearance Agreement, the Credit Agreement, or any Loan Document, or under any agreement, document or instrument relating to or evidencing any of the liens of the Agent or any Lender or under any lien securing any Obligation; and

The Borrower directs and authorizes the Agent to debit the Revolving Credit Loans for the amount of all such costs and expenses.

28.    <u>Further Assurances</u>. The Borrower will from time to time, make, do exercise and acknowledge, as requested by the Agent from time to time, such further agreements, certificates, documents, instruments, acts, deeds, conveyances, mortgages, security agreements, financing statements, continuation statements and other assurances as may be required or reasonably requested for the purpose of effectuating the intent hereof and of the Credit Agreement and other Loan Documents.

29.    <u>Reservation of Rights as to Other Obligations</u>. The Borrower acknowledges and agrees that it may have other loans and obligations to the Agent and the Lenders <u>other than</u> the Obligations which are the subject of this Forbearance Agreement (hereinafter, the **"Other Obligations"**), which Other Obligations are in no way affected by this Forbearance Agreement and remain fully enforceable in accordance with their own terms and provisions. The Borrower hereby agrees that the Agent and the Lenders, by entering into this Forbearance Agreement, in no way waive, discharge, release, or compromise any claims, causes of action, and rights as to such Other Obligations, and the Borrower agrees and acknowledges that it continues to be liable for payment and performance of such Other Obligations notwithstanding the entry into this Forbearance Agreement by the Agent and the Lenders.

30.    <u>Miscellaneous</u>. This Forbearance Agreement is made for the sole benefit and protection of the Agent, the Lenders, the Borrower and their respective successors and assigns. No other persons shall have any rights whatsoever hereunder. Notices to parties hereunder may be given to them at the addresses and in the manner provided in Section 11.6 [Notices] of the Credit Agreement. If any provision of this Forbearance Agreement is held to be invalid or unenforceable, the remaining provisions shall remain in effect without impairment. All representations and warranties of the Borrower contained herein or made in connection herewith or in connection with the Credit Agreement or any other Loan Document shall survive

the making of and shall not be waived by: (i) the execution and delivery of this Forbearance Agreement, (ii) any investigation by the Agent or any Lender, or (iii) any other event or condition whatsoever. All obligations of the Borrower to make payments to the Agent and the Lenders shall survive the termination of all obligations of the Borrower hereunder and under the Credit Agreement and Loan Documents, and shall not be affected by reason of an invalidity, illegality or irregularity of this Forbearance Agreement, the Credit Agreement, or any Loan Document. The covenants and agreements contained in or given pursuant to this Forbearance Agreement, the Credit Agreement, or under any Loan Document shall continue in force until the payment in full and the discharge of all Obligations of the Borrower. The section and other headings contained in this Forbearance Agreement are for reference purposes only and shall not control or affect the construction of this Forbearance Agreement or the interpretation thereof in any respect. Section and subsection references are to this Forbearance Agreement unless otherwise specified.

31. <u>Execution and Return of Forbearance Agreement</u>. This Forbearance Agreement shall be effective when each of the conditions set forth in Section 17 have been met, this Forbearance Agreement has been signed by the Borrower, the Lenders, and the Agent and delivered to the Agent, and the Borrower has delivered or has made arrangements for the prompt payment, as applicable, to the Agent of the fees required pursuant to Section 6(d).

**[SIGNATURE PAGES FOLLOW]**

[SIGNATURE PAGE 1 OF 5 TO FOURTH AMENDMENT TO CREDIT AGREEMENT AND
FORBEARANCE AGREEMENT]

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have caused this Forbearance Agreement to be executed and delivered as of the day and year first above written.

ALARM ONE, INC.

By: _____

Name: _Peter Maltby_____

Title: _President and CEO_____

ACKNOWLEDGED AND AGREED:

_____
PETER MALTBY, individually

[SIGNATURE PAGE 2 OF 5 TO FOURTH AMENDMENT TO CREDIT AGREEMENT AND FORBEARANCE AGREEMENT]

FORTRESS CREDIT CORP., individually and as Agent

By:_____
Name:_____MARC K. FURSTEIN_____
Title:_____CHIEF OPERATING OFFICER_____

[SIGNATURE PAGE 3 OF 5 TO FOURTH AMENDMENT TO CREDIT AGREEMENT AND
FORBEARANCE AGREEMENT]

DEUTSCHE BANK AG, NEW YORK BRANCH,
as a Lender

By: _____ ELIZABETH A. WHALEN _____

Name: _____ DIRECTOR _____

Title: _____

By: _____

Name: _____

Title: _____

J. MILHERN
VICE PRESIDENT

[SIGNATURE PAGE 4 OF 5 TO FOURTH AMENDMENT TO CREDIT AGREEMENT AND
FORBEARANCE AGREEMENT]

FORTRESS CREDIT OPPORTUNITIES I, as a
Lender

By:_____

Name:_____
       MARC K. FURSTEIN

Title:_____
       CHIEF OPERATING OFFICER

[SIGNATURE PAGE 5 OF 5 TO FOURTH AMENDMENT TO CREDIT AGREEMENT AND
FORBEARANCE AGREEMENT]

FORTRESS CREDIT OPPORTUNITIES II, LP, as
a Lender

By: _____

Name: _____
MARC K. FURSTEIN

Title: _____
CHIEF OPERATING OFFICER