# EXHIBIT G

## LIMITED CONSENT AND SIXTH AMENDMENT TO CREDIT AGREEMENT

This LIMITED CONSENT AND SIXTH AMENDMENT TO CREDIT AGREEMENT (the "**Amendment**") is dated as of the 21st day of November, 2006 (the "**Effective Date**") by and among ALARM ONE, INC., an Illinois corporation (the "**Borrower**"), Peter Maltby (the "**Guarantor**"), the Lenders (as defined herein), and FORTRESS CREDIT CORP., as agent for the Lenders (the "**Agent**").

R E C I T A L S:

A.   Reference is made to that certain Credit Agreement, dated as of February 11, 2005, by and among the Borrower, other Loan Parties from time to time party thereto, the financial institutions from time to time party thereto (the "**Lenders**"), and Agent, as amended by that Waiver and First Amendment to Credit Agreement dated as of June 30, 2005, that Waiver and Second Amendment to Credit Agreement dated as of October 31, 2005, that Third Amendment to Credit Agreement and Forbearance Agreement dated as of December 21, 2005, that Fourth Amendment to Credit Agreement and Forbearance Agreement dated as of January 31, 2006, and that Fifth Amendment to Credit Agreement and Forbearance Agreement dated as of March 31, 2006 (as so amended, the "**Credit Agreement**");

B.   The Borrower desires to sell certain customer accounts and related assets located in the State of California, as more fully described in that Account Purchase Agreement dated as of November 1, 2006, by and between the Borrower, as seller, and ADT Security Services, Inc., a Delaware corporation, as buyer, attached hereto as <u>Exhibit A</u>, on the terms and conditions set forth therein;

C.   The sale of such accounts is not permitted under Section 8.2.7 [Disposition of Assets or Subsidiaries] of the Credit Agreement, which provides in part that the Loan Parties (as defined in the Credit Agreement) shall not sell, convey, assign, lease, abandon or otherwise transfer or dispose of any of their properties or assets with certain exceptions, without consent of the Required Lenders;

D.   The Borrower acknowledges that certain Events of Default have occurred and are continuing;

E.   The Borrower has requested that the Lenders consent to the sale of the accounts described above; and

F.   The Agent and the Required Lenders have agreed to concede certain valuable rights, including allowing collateral proceeds to be used under certain circumstances for purposes other than repayment of the Obligations, and enter into this Amendment, in each case upon the terms and conditions hereinafter set forth.

K&E 11470538.7

NOW, THEREFORE, in consideration of the above recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby mutually acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1.   Definitions. All capitalized terms used but not defined in this Amendment shall have the meanings ascribed thereto in the Credit Agreement. The rules of construction set forth in Section 1.2 [Construction] of the Credit Agreement apply to this Amendment.

2.   Affirmation of Recitals. The recitals set forth above are true and correct and incorporated herein by reference.

3.   Amendments to Credit Agreement.

(a) Section 1.1 [Certain Definitions] of the Credit Agreement is hereby amended by inserting the following definitions in proper alphabetical order:

"Account Purchase Agreement" shall mean that certain Account Purchase Agreement dated as of November 1, 2006, by and between the Borrower, as seller, and Buyer, in the form attached to the Sixth Amendment as Exhibit A (without giving effect to any amendment, waiver, supplement or other modification thereto that is not approved by the Agent in its reasonable discretion).

"Account Sale" shall mean the sale on or after the Sixth Amendment Effective Date of certain customer accounts and related assets located in the State of California, pursuant to, in accordance with and subject to the terms and conditions of the Account Purchase Agreement.

"Account Sale Proceeds" shall have the meaning set forth in the Sixth Amendment.

"ADT Payment" shall mean the payment upon completion of the Account Sale of amounts due and owing by the Borrower to ADT under previously executed Transition Services Agreements between the Borrower and ADT; *provided*, that the amount of the ADT Payment shall in no event exceed $1,700,000.00.

"Buyer" shall mean ADT Security Services, Inc., a Delaware corporation.

"Sixth Amendment" shall mean that certain Limited Consent and Sixth Amendment to Credit Agreement dated as of November 21, 2006, entered into by the Borrower, the Guarantor, the Agent and the Lenders.

"Sixth Amendment Effective Date" shall mean the "Effective Date" as defined in the Sixth Amendment.

K&E 11470538.7

(b) Section 5.5.5 [Prepayment Fee] of the Credit Agreement is hereby amended by adding at the end thereof the following new sentence:

> "The parties hereto acknowledge and agree that the prepayment fee in this Section 5.5.5 shall be applicable to any prepayment of principal of the Loans from the Account Sale Proceeds."

(c) Section 5.5 [Mandatory Prepayments] of the Credit Agreement is hereby further amended by adding at the end thereof the following new Section 5.5.6:

> "Section 5.5.6    Application of Prepayments.
>
> Notwithstanding anything to the contrary contained herein or in the other Credit Documents, all amounts received by the Agent from proceeds of the Account Sale (it being understood that such amounts shall be the Account Sale Proceeds), together with any amounts received by the Borrower after closing of the Account Sale as adjustments to the purchase price therefor, shall be applied to payment of the Obligations, and shall be applied first, to payment in full of all reasonable costs and expenses (including reasonable legal fees and expenses of Kirkland & Ellis LLP and Buchanan Ingersoll & Rooney PC) paid or incurred by the Agent and the Lenders on or before the Sixth Amendment Effective Date in connection with the Loan Documents, including in connection with realizing on the Collateral or collection of any Obligations of any Loan Party under any of the Loan Documents (including advances made by Lenders or any one of them or Agent for the reasonable maintenance, preservation, protection or enforcement of, or realization upon, the Collateral, including advances for taxes, insurance, repairs and the like and the reasonable expenses incurred to sell or otherwise realize on, or prepare for sale or other realization on, any of the Collateral); second, to the payment of $50,000 of reasonable legal fees and expenses incurred prior to the Sixth Amendment Effective Date by counsel to the Subordinated Creditor; and third, to payment of the Term Loans A (together with any applicable prepayment fee under Section 5.5.5) to the extent of any remaining Account Sale Proceeds, prior to the payment of other Obligations in accordance with and in the order provided in the other applicable provisions of this Agreement.."

(d) Section 5.10 [Exit Fee] of the Credit Agreement is hereby amended by adding at the end thereof the following new sentence:

> "The parties hereby acknowledge that on and as of the Sixth Amendment Effective Date the amount of the Exit Fee is $1,350,000, $350,000 of which represents amounts owed to the Lenders and added to the Exit Fee subsequent to February 11, 2005 as a result of deferral of the payment of such amounts owed at the request of the Borrower.

K&E 11470538.7

(e) The Credit Agreement is hereby amended by adding thereto the following as a new Section 12:

"12    PLANNED SALES PROCESS.

12.1    Further ADT Sale.

Commencing on the Sixth Amendment Effective Date, Borrower shall use commercially reasonable efforts to obtain (by a date no later than the date that is two weeks after the Sixth Amendment Effective Date) from Buyer a signed letter of intent that provides for the sale by the Borrower to Buyer of all or substantially all of the customer accounts and related assets (collectively, the "**Customer Accounts**"), which letter of intent shall be on terms and conditions acceptable to the Agent in its sole discretion (such acceptable letter of intent being an "**Acceptable LOI**"). In the event the Borrower fails to deliver to the Agent a copy of an Acceptable LOI on or prior to the date that is two weeks after the Sixth Amendment Effective Date, or in the event an Acceptable LOI does not at any time cover all of the Customer Accounts, the Agent may, in its sole discretion, give notice to the Borrower (an "**Auction Notice**") that the Borrower is required to comply with the provisions of Section 12.2

12.2    Auction Process.

Upon the Borrower's receipt of an Auction Notice, the Borrower shall immediately undertake to commence, on an expeditious basis, an auction process pursuant to which the Borrower shall inform potential purchasers that it desires to sell through one or more transactions to one or more buyers all or substantially all of the Customer Accounts (to the extent not covered by an effective Acceptable LOI), solicit bids for the purchase of such Customer Accounts and accept certain bids in the manner described herein (the "**Auction Process**"), consistent with applicable laws, regulations and orders. In connection with the foregoing, the Borrower shall:

12.2.1 On or prior to the date that is one week after the delivery to the Borrower of an Auction Notice, deliver to the Agent and the Lenders an executed copy of a retention agreement (the "**Retention Agreement**") with a Person or Persons reasonably satisfactory to the Agent to be retained as a sales advisor (collectively with any successors thereto approved by the Agent, the "**Sales Advisor**"), such Retention Agreement to be in form and substance reasonably satisfactory to the Agent;

12.2.2 (x) On or prior to the date that is two weeks after the delivery to the Borrower of an Auction Notice (i) deliver to the Agent and

the Lenders a copy of the contract prepared by the Borrower and the Sales Advisor to be provided to potential purchasers (the "**Bid Contract**") of such Customer Accounts in the Auction Process and a list reasonably acceptable to the Agent identifying potential purchasers, such Bid Contract to be in form and substance satisfactory to the Agent in its sole discretion and specifying that bids are due on a date not more than thirty days after the Initial Bid Contract Distribution Date (as defined below), and (ii) directly or indirectly through the Sales Advisor, distribute Bid Contracts to potential purchasers identified by the Borrower, together with any other potential purchasers identified by the Agent or the Sales Advisor prior to such date (*provided*, that such date for distribution of Bid Contracts may be extended with the written consent of the Agent (in its sole discretion) on behalf of the Lenders); and (y) from time to time thereafter distribute the Bid Contract to additional potential purchasers identified from time to time by the Agent or the Sales Advisor (for purposes hereof, the earliest date upon which a Bid Contract is sent by the Borrower or the Sales Advisor to a potential purchaser shall be the "**Initial Bid Contract Distribution Date**");

12.2.3 Deliver a written progress report to the Agent (for distribution to the Lenders), with respect to the Auction Process no less frequently than weekly, to be delivered no later than 5:00 p.m. EST on the Friday of each week (if such day is not a Business Day then before 5:00 p.m. EST on the first Business Day preceding the Friday of such week), which progress report shall include copies of any completed Bid Contracts received by the Borrower or Sales Advisor (each such received completed Bid Contract, a "**Bid**"); *provided*, that the Agent may from time to time request telephonic updates or meetings with the Sales Advisor and/or the Borrower (with the participation of any Lender desiring to participate) in lieu of such written progress reports, and the frequency of such telephonic updates or meeting shall be as reasonably determined from time to time by the Agent; and

12.2.4 No later than thirty seven days after the Initial Bid Contract Distribution Date, evaluate and consider, in consultation with the Sales Advisor and Agent, each Bid received to determine which Bid or combination of Bids should be accepted by the Borrower to maximize the value received in exchange for the Customer Accounts, which determination shall be subject to approval of the Agent in its sole discretion."

4.     Limited Consent to Account Sale.

(a) The Borrower hereby represents and warrants that the information provided in the Account Purchase Agreement, which includes a description of the Accounts (as defined therein), calculation of the purchase price and closing date, is true and complete, and the Account Purchase Agreement has not been amended, modified or otherwise supplemented.

(b) The Borrower hereby requests and, subject to the terms and conditions hereof, the Agent and the Lenders, notwithstanding anything to the contrary contained in the Loan Documents, hereby consent and agree to (and approve) the Account Sale in accordance with and subject to the terms and conditions of the Account Purchase Agreement, so long as upon consummation of the Account Sale the Buyer shall send directly to the Agent, by wire transfer of immediately available funds, a portion of the cash consideration for such sale equal to not less than $3,200,000 (such amount of proceeds sent directly to the Agent being the "**Account Sale Proceeds**") (it being understood that such amount shall be the aggregate amount of cash proceeds from the Account Sale remaining after deducting therefrom nothing other than the ADT Payment). The consent and approval set forth in this Section 4 shall be limited precisely as written and is provided solely for the purpose of permitting the Account Sale in accordance with the requirements of this paragraph without breaching Section 8.2.7 of the Credit Agreement or any other relevant provision of the Loan Documents, and does not constitute, and should not be construed as, a consent to any other transaction or any other failure to comply with any provision of the Credit Agreement or the Loan Documents.

(c) Upon consummation of the Account Sale in accordance with the requirements of paragraph (b) above, the Agent shall simultaneously execute and deliver to the Borrower a lien release in the form of Exhibit B, subject to the continuation of such Liens on and security interests in the proceeds from the Account Sale and the delivery of the Account Sale Proceeds directly to the Agent as required in paragraph (b) above.

(d) The Borrower shall ensure that the Account Sale Proceeds are paid directly to the Agent. If the Borrower receives any Account Sale Proceeds, then the Borrower shall immediately pay such amounts to the Agent in the same form as received and shall under no circumstances commingle such proceeds with any other funds or assets of the Borrower or any other Person.

5.     ADT Payment. As additional consideration for the Borrower entering into this Amendment, the Agent and the Lenders agree that upon the completion of the Account Sale, the Agent and the Lenders shall permit the Borrower to make (and hereby consent to the making of) the ADT Payment. The ADT Payment shall be required and made no earlier than the consummation of the Account Sale and the payment of the Account Sale Proceeds to the Agent.

6.     General Release. Each of the Borrower and the Guarantor may have certain Claims against the Released Parties, as those terms are defined below, regarding or relating to the Credit Agreement or the other Loan Documents. The Agent, the Lenders, the

6

Borrower and the Guarantor desire to resolve each and every one of such Claims in conjunction with the execution of this Amendment and thus each of the Borrower and the Guarantor makes the release contained in this Section 6. In consideration of the Agent's and the Lenders' entering into this Amendment and agreeing to the substantial concessions as set forth herein, each of the Borrower and the Guarantor hereby fully and unconditionally releases and forever discharges each of the Agent and the Lenders, and their respective directors, officers, employees, subsidiaries, branches, affiliates, attorneys, agents, representatives, successors and assigns and all persons, firms, corporations and organizations acting on any of their behalves (collectively, the "**Released Parties**"), of and from any and all claims, allegations, causes of action, costs or demands and liabilities, of whatever kind or nature, from the beginning of the world to the date on which this Amendment is executed, whether known or unknown, liquidated or unliquidated, fixed or contingent, asserted or unasserted, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, anticipated or unanticipated, which the Borrower or the Guarantor has, claims to have or hereafter claims to have against the Released Parties by reason of any act or omission on the part of the Released Parties, or any of them, occurring prior to the date on which this Amendment is executed, including on account of or in any way affecting, concerning or arising out of or founded upon this Amendment up to and including the date on which this Amendment is executed, including all such loss or damage of any kind heretofore sustained or that may arise as a consequence of the dealings among the parties up to and including the date on which this Amendment is executed, including the administration or enforcement of the Loans, the Notes, the Obligations, the Credit Agreement or any of the Loan Documents (collectively, all of the foregoing are the "**Claims**"). Each of the Borrower and the Guarantor represents and warrants that it has no knowledge of any claim by it against the Released Parties or of any facts or acts or omissions of the Released Parties which on the date hereof would be the basis of a claim by the Borrower or the Guarantor against the Released Parties which is not released hereby. Each of the Borrower and the Guarantor represents and warrants that the foregoing constitutes a full and complete release of all Claims.

(a) <u>Extinguish Claims</u>. Each of the Borrower and the Guarantor agrees that the release by them is voluntarily and knowingly given with the express intention of effecting the legal consequences provided in section 1541 of the California Civil Code, which provides as follows:

> An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration.

(b) <u>Unknown Claims</u>. Each of the Borrower and the Guarantor understands and acknowledges that there is a risk that after the execution of this Amendment, including this Section 6: (i) the facts with respect to this Section 6 may be found to be other than or different from the facts now believed to be true, and (ii) damages or losses presently known, if any, may be or may become more serious than either the Borrower or the Guarantor now anticipates. Each of the Borrower and the Guarantor agrees to and hereby does release the Released Parties and assume all risks for releasing all Claims. Each of the Borrower and the Guarantor has read the entire section 1542 of the California Civil Code set forth below and, having had the opportunity to consult with legal counsel, each of the Borrower and the Guarantor hereby expressly waives

7

and relinquishes any and all rights and benefits available to them by section 1542 which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

(c) <u>Covenant Not to Sue</u>. It is the express purpose of this Section 6 to assure that the Released Parties shall not be sued upon any allegation, of any kind, arising out of the Claims (for the avoidance of doubt, it is understood that this covenant shall in no way prohibit the Released Parties from being sued to the extent that the allegations of such suit are based on acts of the Released Parties occurring after the date on which this Amendment is executed). To that end, as of and upon the date hereof, each of the Guarantor and the Borrower agrees and covenants not to bring, institute, file, commence, cause to be commenced, voluntarily aid in any way or further prosecute any action or proceeding against any of the Released Parties, in any forum, tribunal, court, or jurisdiction in any way arising out of and relating to the Claims (for the avoidance of doubt, it is understood that this covenant shall in no way prohibit the Borrower and the Guarantor from commencing or further prosecuting any action or proceeding to the extent such action or proceeding is based on acts of the Released Parties occurring after the date on which this Amendment is executed).

(d) <u>Binding On Successors And Assigns</u>. This Section 6 shall be binding not only upon each of the Borrower and the Guarantor but also upon any respective heirs, assigns, beneficiaries, holders in due course, representatives, trustees, affiliates, principals, agents, shareholders, officers, directors, employees, and all other successors-in-interest of each. This Section 6 shall survive the termination of this Amendment and shall remain in full force and effect commencing on the date on which it is executed and continuing thereafter, notwithstanding the satisfaction of the Obligations. The obligations of each of the Borrower and the Guarantor under the Loan Documents shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, discharged or in any way affected by:

> (i)    any exercise or nonexercise of any right, remedy, power or privilege under or in respect of the Credit Agreement or any other Loan Document, any document relating to or evidencing any of the Agent's or Lenders' liens, or applicable Law, including any waiver, consent, extension, indulgence or other action or inaction in respect thereof; or

> (ii)   any other act or thing or omission or delay to do any other act or thing which could operate to or as a discharge of the Borrower or the Guarantor, as the case may be, as a matter of law, other than indefeasible payment in full in cash of all Obligations, including all obligations under the Credit Agreement and the other Loan Documents, including this Amendment.

(e) <u>Informed Consent</u>. Each of the Borrower and the Guarantor have carefully read this Section 6, know what is in it, and sign it freely and voluntarily, having had an opportunity to discuss this Amendment, including this Section 6, with counsel. Each of the Borrower and the Guarantor declares that, prior to and in connection with the execution of this Section 6, experts, legal counsel or other sources of their own selection have provided sufficient data and advice so that they are able to exercise their judgment intelligently in deciding whether to enter into this Section 6. Each of the Borrower and the Guarantor further represents that their decision to enter into this Section 6 is not predicated on or influenced by any declarations or representations of the Agent, any Lender or other persons other than as expressly set forth in this Amendment. Each of the Borrower and the Guarantor further expressly states that it has read this Section 6 and understands all of its terms. Each of the Borrower and the Guarantor executes this Section 6 voluntarily and with full knowledge of its significance.

(f) <u>Warranty Of Authority</u>. Each of the Borrower and the Guarantor represents and warrants that:

   (i)   it has the right and authority to execute this Section 6; and

   (ii)  it is the sole owner of the Claims it compromises and or releases pursuant to this Section 6 and that no part of such Claims have been sold, assigned, transferred, conveyed, hypothecated, encumbered or otherwise disposed of in any way.

7.   <u>Acknowledgements and Consent</u>

(a) The Borrower hereby acknowledges that it has determined in its independent business judgment to pursue the Account Sale and the Acceptable LOI and/or the Auction Process, in each case in accordance with the terms set forth in this Amendment, in order to repay the Obligations to the fullest extent possible and as promptly as possible, and that such actions inure to its benefit. The Borrower hereby acknowledges that its determination to pursue the Account Sale and the Acceptable LOI and/or the Auction Process, in each case in accordance with the terms set forth in this Amendment, is a material inducement for the Agent's and Lenders' decisions to enter into this Amendment and their agreements contained herein (including but not limited to their agreement to allow the ADT Payment to be made on account of an unsecured claim). Each of the Borrower and the Guarantor acknowledges that the Existing Defaults (such term used hereinafter as defined in the Fourth Amendment to Credit Agreement and Forbearance Agreement dated as of January 31, 2006) and the other Events of Default described in the reservation of rights letters from the Agent to the Borrower dated June 15, 2006 and August 21, 2006 and certain other Events of Default have occurred and are continuing and are in no way waived or otherwise affected by this Amendment, and that the Agent and Lenders are entitled to exercise all of their rights and remedies under the Credit Agreement, the Credit Support Documents (as defined below), the other Loan Documents and applicable law.

(b) Each of the Loan Documents to which Borrower or the Guarantor are party are herein referred to collectively as the "Credit Support Documents" and each individually as a "Credit Support Document". Each of the Borrower and the Guarantor hereby acknowledges that it has reviewed the terms and provisions of the Credit Agreement, the Credit Support Documents and this Amendment. Each of the Borrower and the Guarantor hereby confirms and reaffirms that each Credit Support Document to which it is a party or otherwise bound, and all Collateral encumbered thereby, will continue to guaranty or secure, as the case may be, the payment and performance of all obligations purported to be guaranteed or secured under the Credit Support Documents, including, without limitation, the payment and performance of all obligations of the Borrower whether now or hereafter existing under or in respect of the Loan Documents (including, without limitation, the obligations of Borrower with respect to the Loans). Each of the Borrower and the Guarantor hereby acknowledges and agrees that (i) the Credit Support Documents to which it is a party or otherwise bound shall continue in full force and effect and that all of its obligations thereunder shall be valid and enforceable and shall not be impaired or limited by the execution or effectiveness of this Amendment, and (ii) nothing in this Amendment or any other Loan Document shall be deemed to require the consent of any Person not party hereto to any future amendments, consents or waivers to the Credit Agreement as amended hereby.

(c) Borrower hereby acknowledges that as of October 31, 2006, Borrower is liable to Agent and Lenders for (1) $4,920,170.00 in principal amount of Term Loans A, (2) $14,109,401.92 in principal amount of Term Loans B, (3) $3,791,856.00 in principal amount of the Revolving Credit Loans, (4) unpaid default interest accrued since November 15, 2005 at 3.00% per annum (above the rate otherwise applicable) pursuant to Section 4.3 of the Credit Agreement (Borrower acknowledges that such default interest amount accrued and unpaid at such 3.00% rate as of October 31, 2006, was $751,049.79), which default interest has continued to accrue through the date of this Amendment and shall continue to accrue until the Obligations are paid in full in cash or such default interest is otherwise waived by the Agent on behalf of the Lenders, plus (5) accrued and unpaid interest on the Loans and accrued and unpaid fees (including the Exit Fee) and expenses (including reasonable fees and expenses of Kirkland & Ellis LLP and Buchanan Ingersoll & Rooney PC). Each of the Borrower and the Guarantor hereby acknowledge and reaffirm that all obligations described in this Section 7(c), including without limitation the Borrower's obligation to pay the Exit Fee and the Borrower's obligation to pay default interest that has accrued (and continues to accrue) and remains unpaid, are supported by the new consideration and new value provided by the concessions of the Agent herein (which concessions include but are not limited to the Agent and Lenders permitting the ADT Payment to be made on account of an unsecured claim), are absolute and unconditional and are the legal, valid and binding obligations of the Borrower and the Guarantor without offset, defense or counterclaim, and interest, costs and expenses continue to accrue with respect thereto.

(d) Except for the Loans outstanding as of the Effective Date, the Borrower acknowledges that the Lenders have no obligation to make further Loans under the Credit Agreement, as amended, and all future prepayments or repayments of Loans outstanding as of the Effective Date may not be reborrowed and shall permanently reduce all commitments to the extent so repaid or prepaid as further provided in the Credit Agreement, as amended.

(e) Neither Agent nor any Lender has or shall have, by reason of this Amendment, the Credit Agreement, as amended, or the other Loan Documents, a fiduciary relationship in respect of Borrower or the Guarantor.

(f) Each of the Borrower and the Guarantor hereby confirm, reaffirm and acknowledge that (i) the Agent and Lenders have an enforceable, valid and (to the extent a security interest in the Collateral could be perfected under the Uniform Commercial Code of any jurisdiction by the filing of a financing statement (it being understood that perfection may have occurred by other means) or, in the case of deposit accounts, by taking control thereof) perfected first priority Lien on and security interest in the Collateral, and (ii) the continuing validity and effectiveness of Agent's and Lenders' rights under the Loan Documents and applicable law, including, without limitation, the right of Agent to recover any and all amounts owed to Lenders, free of set-off, defense or counterclaim, by foreclosure on or redemption or other disposition of the Collateral.

(g) The Borrower acknowledges that all reasonable costs, fees and expenses incurred by the Agent and its counsel (including Kirkland & Ellis LLP and Buchanan Ingersoll & Rooney PC) with respect to this Amendment and the documents and transactions contemplated hereby (including but not limited to any fees incurred and to be incurred in connection with the Agent's review of the collateral for the Obligations) shall be obligations of the Borrower owed under the Credit Agreement.

(h) Each of the Borrower and the Guarantor acknowledges that the agreements of the Agent and Lenders contained in this Amendment (including but not limited to the agreement of the Agent and Lenders to permit the ADT Payment to be made on account of an unsecured claim) provide the Borrower with new consideration and new value.

8. *Representations, Warranties and Covenants.* As a material inducement to the Agent and the Lenders to enter into this Amendment, the Borrower hereby represents, warrants, covenants and agrees with the Agent and the Lenders that:

(a) except for claims and judgments disclosed in writing to the Agent prior to the date hereof, there are no actions, suits or proceedings pending, or, to the best of Borrower's knowledge, threatened against or directly affecting the Borrower or any collateral securing the Borrower's obligations under the Credit Agreement, in any court or before or by any governmental instrumentality, whether federal, state, county or municipality;

(b) the Borrower is duly organized, validly existing and in good standing under the laws of the jurisdiction under which each is organized;

(c) the Borrower has all the power and authority to execute, deliver and perform this Amendment; and

(e) the consummation of the transactions herein contemplated and the performance or observance of the Borrower's obligations under the Loan Documents, this Amendment and the transactions required or contemplated herein to which the Borrower is a party:

11

K&E 11470538.7

    (i)  have been duly authorized by all necessary action on the part of the Borrower; and

    (ii)  will not conflict with or result in a breach of or default under any injunction, or decree of any court or governmental instrumentality, or any forbearance agreement or instrument to which the Borrower is now a party or is subject.

  (f)  To the extent any consent, approval, order, or authorization or registration, declaration, or filing with any governmental authority or other person or legal entity is required in connection with the valid execution and delivery of this Amendment or the carrying out or performance of any of the transactions required or contemplated by this Amendment, all such consents, approvals, orders or authorizations shall have been obtained or all such registrations, declarations, or filings shall have been accomplished prior to the execution of this Amendment.

  9.  <u>Ratification</u>. The Borrower and the Guarantor each reconfirm and ratify the Credit Agreement, each guaranty of the Obligations executed by the Guarantor, and all other Loan Documents executed in connection therewith, and all amendments or modifications to each of such documents entered into prior to the date hereof, except to the extent any such documents are expressly modified by this Amendment, and the Borrower and the Guarantor each confirm that all such documents have remained in full force and effect since the date of their execution.

  10.  <u>Authorization by Lenders</u>. The undersigned Lenders hereby authorize the Agent to release such Collateral and such liens as are contemplated to be released by this Amendment and take all other actions (including but not limited to delivery of notices to the Borrower and other creditors) deemed necessary or advisable in the judgment of the Agent to give effect to and carry out the purposes of this Amendment.

  11.  <u>Counterparts</u>. This Amendment may be executed in one or more counterparts and by facsimile, each of which shall constitute an original and all of which taken together shall constitute one agreement. Each party executing this Amendment represents that such party has the full authority and legal power to do so.

  12.  <u>Governing Law and Binding Effect</u>. This Amendment shall be deemed to be a contract under the Laws of the State of New York and shall, pursuant to New York General Obligations Law Section 5-1401, for all purposes be governed by and construed and enforced in accordance with the laws of the State of New York. This Amendment shall be binding upon the Borrower, the Guarantor, the Lenders, and the Agent and their respective successors and assigns; provided, however, that each of the Borrower and the Guarantor may not assign any of its rights or duties hereunder without the prior written consent of the Agent in its sole discretion.

13. <u>Miscellaneous</u>. This Amendment is made for the sole benefit and protection of the Agent, the Lenders, the Borrower and their respective successors and assigns. No other persons shall have any rights whatsoever hereunder. Notices to parties hereunder may be given to them at the addresses and in the manner provided in Section 11.6 [Notices] of the Credit Agreement. If any provision of this Amendment is held to be invalid or unenforceable, the remaining provisions shall remain in effect without impairment. All representations and warranties of the Borrower contained herein or made in connection herewith or in connection with the Credit Agreement or any other Loan Document shall survive the making of this Amendment and shall not be waived by: (i) the execution and delivery of this Amendment, (ii) any investigation by the Agent or any Lender, or (iii) any other event or condition whatsoever. All obligations of the Borrower to make payments to the Agent and the Lenders shall survive the termination of all obligations of the Borrower and of the Guarantor hereunder and under the Credit Agreement and the other Loan Documents, and shall not be affected by reason of an invalidity, illegality or irregularity of this Amendment, the Credit Agreement, or any Loan Document. The covenants and agreements contained in or given pursuant to this Amendment, the Credit Agreement, or under any other Loan Document shall continue in force until the indefeasible payment in full in cash and the discharge of all Obligations of the Borrower. The section and other headings contained in this Amendment are for reference purposes only and shall not control or affect the construction of this Amendment or the interpretation thereof in any respect. Section and subsection references are to this Amendment unless otherwise specified.

14. <u>Conditions to Effectiveness; Effective Date</u>. This Amendment shall be effective on and as of the Effective Date when the last of the following has occurred: (i) the Amendment has been duly executed, in counterparts or otherwise, by the Borrower, the Guarantor, the Agent and the Required Lenders; and (ii) the Agent shall have received a copy of a consent executed by the holders of the Subordinated Debt relating to or in connection with the Account Sale (and copies of any and all other agreements or documents executed in connection therewith), and such agreements, documents and consent shall be in form and substance satisfactory to the Agent in its sole discretion.

**[SIGNATURE PAGES FOLLOW]**

NOV-20-2006 MON 06:22 PM    BLUE KIWI              FAX No. 8014240019           P. 01
11/20/2006  16:28   7149399809              ALARMONE                              PAGE 01/01

[SIGNATURE PAGE 1 OF 5 TO SIXTH AMENDMENT TO CREDIT AGREEMENT]

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have caused this Amendment to be executed and delivered as of the day and year first above written.

ALARM ONE, INC.

By: _____
Name: Peter Maltby
Title: President and CEO


GUARANTOR:

_____
PETER MALTBY, Individually

[SIGNATURE PAGE 2 OF 5 TO SIXTH AMENDMENT TO CREDIT AGREEMENT]

FORTRESS CREDIT CORP., individually and as Agent

By: _____
Name: _____
Title: CONSTANTINE DAKOLIAS
       CHIEF CREDIT OFFICER

**[SIGNATURE PAGE 3 OF 5 TO SIXTH AMENDMENT TO CREDIT AGREEMENT]**

DEUTSCHE BANK AG, NEW YORK BRANCH,
as a Lender

By: *(signature)*
Name: Erik Falk
Title: Managing Director

By: *(signature)*
Name: ELIZABETH A. WHALEN
Title: DIRECTOR

[SIGNATURE PAGE 4 OF 5 TO SIXTH AMENDMENT TO CREDIT AGREEMENT]

FORTRESS CREDIT OPPORTUNITIES I, as a Lender

By: _____
Name: _____CONSTANTINE DAKOLIAS_____
Title: _____CHIEF CREDIT OFFICER_____

[SIGNATURE PAGE 5 OF 5 TO SIXTH AMENDMENT TO CREDIT AGREEMENT]

FORTRESS CREDIT OPPORTUNITIES II, LP, as a Lender

By:_____
Name:  CONSTANTINE DAKOLIAS
Title:  CHIEF CREDIT OFFICER