UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ _____ _____. _____. _____ __x

FORTRESS CREDIT CORP.,

Plaintiff,

-against-

ALARM ONE, INC.,

Defendant.

_ . _____. _____. _____. .. _____. _x

*(stamp, upside down, top right:)*

DATE FILED: _____
9/7/07
DOC#: _____
ELECTRONICALLY FILED
DOCUMENT
USDS SDNY

07-CV-7590 (CM) (RLE)

## DECISION AND ORDER

McMahon, J.:

Plaintiff Fortress Credit Corp. ("Fortress") brings this action to foreclose upon its lien on
certain assets of defendant Alarm One, Inc. ("Alarm One"). The action stems from a February 11,
2005 Credit Agreement ("Credit Agreement"), pursuant to which various lenders and Fortress
provided Alarm One with credit facilities in the aggregate principal amount of approximately $48
million. In order to secure these credit facilities, Alarm One executed a February 11, 2005
Security Agreement ("Security Agreement") that granted Fortress a "continuing first priority lien
on and security interest in" substantially all of Alarm One's assets.

Before the court is Fortress's application *ex parte* for an appointment of a receiver.
Fortress claims that such appointment is necessary because Alarm One is in default of the parties'
Credit Agreement and Fortress maintains a property interest in Alarm One's assets by virtue of the
Security Agreement. Fortress further argues that the Credit Agreement explicitly permits this
court to appoint a receiver *ex parte*.

For the reasons stated below, the court declines to grant the application *ex parte* and

directs Fortress to resubmit it by order to show cause on notice to defendant.

## I. Background

### A. The Credit Agreement and the Security Agreement

The parties entered into the Credit Agreement on February 11, 2005, under which various lenders and Fortress (in its capacity as agent for the lenders) provided Alarm One with "a Revolving Credit Facility in a principal amount not to exceed $20,000,000, a $17,500,000 Term Loan A Facility, and a $12,500,000 Term Loan B Facility." (Affidavit of James K. Noble, III ("Noble Aff.") ¶ 2.) In exchange for this credit, Alarm One assumed certain payment obligations.

That same day, the parties also signed the Security Agreement that granted Fortress a "continuing first priority lien on and security interest in" specified "Collateral subject only to permitted Liens." (Security Agreement ¶ 2, attached as Ex. 8 to Noble Aff.)

The Security Agreement defines "Collateral" as

all of [Alarm One's] right, title and interest in . . . the following . . . property. . . :

(i) all now existing and hereafter acquired or arising Accounts, Goods, General Intangibles, Payment Intangibles, Deposit Accounts, Chattel Paper . . . , Documents, Instruments, Software, Investment Property, Letters of Credit, Letter of Credit Rights, Advices of Credit, Money, Commercial Tort Claims . . . , Equipment and Inventory, Fixtures and Supporting Obligations . . .

(ii) to the extent . . . not included in clause (i), each and every other item of personal property and fixtures . . . including all licenses, contracts and agreements, and all collateral for the payment or performance of any contract or agreement . . .

(iii) all present and future business records and information, including computer tapes and other storage media containing . . . computer programs and software . . . . .

(Id. ¶ 1(b)(i)-(iii).)

The Credit Agreement establishes certain occurrences that constitute "Events of Default"

(Credit Agreement §§ 9.1.1 thru 9.1.15. attached as Ex. 1 to Noble Aff.), as well as the

consequences that flow from such defaults. (Id. §§ 9.2.1 thru 9.2.6.) Among these consequences,

the Agreement states,

> If an Event Default shall occur and be continuing, and whether or not [Fortress]
> shall have accelerated the maturity of Loans pursuant to any of the foregoing
> provisions of this Section 9.2, [Fortress] . . . if owed any amount with respect to the
> Loans, may proceed to protect and enforce its rights by suit in equity, action at law
> and/or other appropriate proceeding . . . including as permitted by applicable Law
> the obtaining of the *ex parte* appointment of a receiver . . . .

(Id. § 9.2.4.)

### B. Alarm One's Defaults

In support of its application, Fortress has submitted an extensive record including the

affidavit of Mr. James Noble, Fortress's Secretary, which details the occurrence of at least two

"Events of Default" under the Credit Agreement.

First. "From October 31, 2005 to December 21, 2005, Alarm One failed to maintain the

ratio of Funded Debt to Consolidated Cash Flow from Operations of 6.0 to 1.0. Alarm One

thereby failed to comply with Section 8.2.17 of the Credit Agreement." (Noble Aff. ¶ 14(a).)

Second. "Alarm One failed to maintain the sum of Availability plus unrestricted cash at no

less than $1,000,000 for the period ending October 31, 2005, thereby violating Section 8.2.19."

(Id. ¶ 14(b).)

Alarm One has acknowledged on four separate occasions that these two failures to fulfill

its contractual duties constitute Events of Default that "occurred and are continuing." (See

December 21, 2005 Third Amendment to Credit Agreement and Forbearance Agreement ¶¶ B-C,

attached as Ex. 4 to Noble Aff.; January 31, 2006 Fourth Amendment to Credit Agreement and

3

Forbearance Agreement ¶¶ B-C, attached as Ex. 5 to Noble Aff.; March 31, 2006 Fifth

Amendment to Credit Agreement and Forbearance Agreement ¶ 7(a), attached as Ex. 6 to Noble

Aff.; November 21, 2006 Limited Consent and Sixth Amendment to Credit Agreement ¶ D,

attached as Ex. 7 to Noble Aff.)

Fortress provided Alarm One with written notice of its Events of Default in five separate

letters dated January 27, March 1, May 4, June 15 and August 21, 2006.  (See Noble Aff., Ex. 10.)

- The January 27 letter notified Alarm One of the two Events of Default described above.

- The March 1 letter notified Alarm One of an additional Event of Default (failure to comply with Section 6(c) of the Fourth Amendment and Forbearance Agreement by failing to complete the sale of the Additional California Accounts on or before February 28, 2006; this failure triggered the Agreement's increased Default Interest Rate).

- The May 4 letter notified Alarm One that the parties' Forbearance Agreement expired April 27, 2006, and expressly reserved Fortress's rights under the Credit Agreement.

- The June 15 letter notified Alarm One of three additional Events of Default (failure to make interest payments due under the Default Interest Rate, failure to accurately calculate its Borrowing Base, and failure to deliver to Fortress updates to Schedule 6.1.29 of the Credit Agreement).

- The August 21 letter notified Alarm One of three additional Events of Default (continuing failure to make interest payments due under the increased Default Interest Rate, failure to make a mandatory prepayment on principal equal to any excess of the Revolving Facility Usage over the Borrowing Base plus accrued interest on such principal amount, and continuing failure to fulfill its duties under Section 8.2.19 of the Credit Agreement).

Aside from the two Events of Default for failure to comply with §§ 8.2.17 and 8.2.19,

Alarm One has not acknowledged the additional Events of Default identified in Fortress's notice

letters.

4

According to Mr. Noble, Alarm One "has not cured its Events of Default." (Noble Aff. ¶ 27.)

## C. *Procedural History*

Fortress filed a Complaint in this court and served Alarm One with a summons on August 24, 2007.

The primary motive for the instant *ex parte* application is the existence of a sexual harassment lawsuit against Alarm One in California state court. Orlando v. Alarm One, Inc. (No. CE CG 01288, Cal. Super. Ct., Fresno Cty.). In that case, the jury rendered a verdict in favor of Ms. Orlando in the amount of $1.7 million on April 28, 2006, and the judge entered judgment on May 2, 2006. On July 28, 2006, Ms. Orlando filed a motion for the appointment of a limited post-judgment receiver for Alarm One, and a motion for assignment of Alarm One's current and future income. (Declaration of Peter Asplund ("Asplund Decl."), Exs. B-C.) The hearing date for both motions was set for August 30, 2006. Fortress submitted the instant *ex parte* application to this court on August 27, 2007, fearing that, "Should Ms. Orlando's motions be granted, all of Alarm One's assets will be effectively depleted and Fortress's continuing first priority security interest in and lien upon those assets will thereby be destroyed." (Pl.'s Br. at 8.) However, the Fresno Superior Court denied both of Ms. Orlando's motions on August 30, 2007. (See Orlando Docket Sheet, Aug. 30, 2007, 10:45 a.m. minute entry.)

## II. Discussion

Fortress asks this court to appoint a receiver for Alarm One in order to protect Fortress's property interest in Alarm One's assets. Fortress argues that it has the right to such an appointment *ex parte* under the explicit terms of the Credit Agreement, and that New York law –

5

which governs the Agreement (Credit Agreement § 11.8)    further supports such an appointment.

Under New York law, "The motion for the appointment of a receiver is made on notice,

but an *ex parte* appointment is permissible if a contract between the parties calls for it." Siegel,

N.Y. Prac. § 333 (4th ed. 2007). However, the court's power to appoint a receiver is discretionary

in nature and, consequently, courts may deny receivership applications "regardless of a specific

[contract] provision for such." F.D.I.C. v. Olympic Towers Assocs., No. 94-CV-0197E, 1994 WL

148132, at *2 (W.D.N.Y. Apr. 18, 1994); see also Lutz v. Goldstone, --- N.Y.S.2d ----, 2007 WL

2191192, at *2 (2d Dep't Jul. 31, 2007.)

In the mortgage foreclosure context, which Fortress urges is the scenario most analogous

to the instant case, courts applying New York law routinely grant *ex parte* applications for the

appointment of a receiver, as long as the applicant complies with two basic requirements.

First, the applicant must demonstrate that there has been a default. Bankers Sav. FSB

v. Somerset Apt. Corp., 575 N.Y.S.2d 249, 250 (N.Y. Sup. Ct. 1991). No general allegations of

default will be assumed to be true; rather, "There must be some proof in the form of an affidavit

of a person with knowledge, or a complaint verified by a person with knowledge." Id.; see also

Olympic Towers Assocs., 1994 WL 148132, at *1. This requirement does not mean, however,

that the applicant must "irrefutably establish[ ]" that a default occurred; "probability of success of

the action is not required." Olympic Towers Assocs., 1994 WL 148132, at *1.

Second, New York courts will not appoint a receiver until an action has been commenced.

"An action is adequately commenced for the purposes of an *ex parte* receivership application

when the summons has been served on any holder of a lien on the property, no matter how

minuscule in amount." Bankers Fed. Sav. FSB, 575 N.Y.S.2d at 250.

6

Moreover, courts appoint receivers *ex parte* in the mortgage foreclosure context where the parties' mortgage agreement permits such action. See, e.g., United Chelsea Nat. Bank v. Rumican 190 Corp., 643 N.Y.S.2d 586, 587 (1st Dep't 1996) ("since the mortgage [agreement] provided for an *ex parte* appointment of a receiver, the appointment . . . was proper"); Crossland Sav., FSB v. LoGuidice-Chatwal Real Estate Invs. Co., 549 N.Y.S.2d 697, 697 (1st Dep't 1990) (affirming "*ex parte* order appointing a receiver, pursuant to the provisions of the mortgage [agreement]").

Here, the Credit Agreement expressly permits *ex parte* applications if they are allowed under applicable law. Fortress has identified at least two instances of default under the Agreement, and Fortress has served a summons on Alarm One in this action. Accordingly, this court certainly *could* appoint a receiver *ex parte*.

But I decline to do so. Numerous factors are present that weigh in favor of notifying Alarm One before appointing a receiver.

First, the two primary defaults alleged by Fortress occurred approximately two years ago. (Noble Aff. ¶ 14.) Although Alarm One acknowledged the existence of these two defaults on several occasions, the most recent acknowledgment occurred nearly one year ago. (Noble Aff., Ex. 7 ⁴ D.) Given that a receivership is an "extraordinary remedy that should be employed with great caution," the somewhat stale nature of both the defaults and Alarm One's acknowledgment makes me reluctant to grant Fortress's application *ex parte*. Bristol Oaks, L.P. v. Werz/berger, No. 95-CV-3973, 1996 WL 19207, at *1 (E.D.N.Y. Jan. 2, 1996).

Second, this *ex parte* application was motivated primarily by Ms. Orlando's motions for appointment of a receiver and assignment of Alarm One's income, in the California litigation. But since the California court denied both motions, the exigent circumstances typically required

7

for an *ex parte* order do not exist here. Thus, Mr. Noble's declaration that Ms. Orlando's motions render "an application *ex parte* . . . necessary" to "protect the Collateral," is no longer accurate. (Noble Aff. ¶ 25.)

Last, Fortress's reliance on a plethora of Southern District and Eastern District orders appointing receivers *ex parte* (Asplund Decl., Exs. F, G, I, K, M, O, Q, S) is unpersuasive. Every *ex parte* order cited by Fortress occurred in a mortgage foreclosure action, where such orders are specifically authorized by a particular New York statute. See N.Y. Real Prop. Acts. Law § 1325 (1) (McKinney 2007). This is not a mortgage foreclosure action, and Fortress has not cited any New York statute that sanctions *ex parte* receiverships in order to foreclose on a lien. While the two contexts may be similar, they are not identical. In light of the concerns discussed above, merely analogous authority is insufficient to convince this court that an *ex parte* order is appropriate here.

## III. Conclusion

For the foregoing reasons, the court declines to grant plaintiff Fortress's application *ex parte*. Fortress should resubmit the application as an order to show cause on notice to defendant Alarm One.

Dated: September 7, 2007

U.S.D.J.

BY FAX TO PLAINTIFF'S COUNSEL

8